[No. 2051.]

THE DELTA COUNTY LAND AND CATTLE COMPANY v. TALCOTT.

1. **Conveyances—Record—Notice—Title.**

    A purchaser of real estate is bound to know what the records disclose concerning the title, and if they indicate the existence of some outside condition by which it may be affected, he is bound to investigate and is charged with knowledge of the facts to which an investigation would lead. But if the records upon their face are complete, and show that the title is good, in the absence of information to the contrary from any other source, he may safely rely upon them.

2. **Deeds of Trust—Release Deeds—Record—Innocent Purchaser.**

    A release deed by the trustee in a deed of trust is such deed or conveyance as comes within the meaning of our recording act, and where, after the maturity of the notes secured by a deed of trust, the trustee executed to the owner of the equity of redemption a release deed which was placed on record and which recited that it was executed at the request of the payee of the notes and in consideration of their payment in full, when, in fact, the notes had not been paid, and the release was executed without the authority or knowledge of the holder of said notes, as between the holder of the notes and the owner of the equity of redemption, the release was fraudulent and void, but one who purchased from the owner for value without notice of the fact that the notes had not been paid, acquired a title free from the lien of the deed of trust.

*Appeal from the District Court of Delta County.*

Mr. D. V. BURNS, for appellant.

Messrs. WOLCOTT & VAILE and Mr. WM. W. FIELD, for appellee.

THOMSON, J.

On the 19th day of October, 1889, The Grand Mesa Land and Cattle Company of Colorado executed a trust deed, whereby it conveyed to E. L. Kellogg, as trustee, certain real estate to secure the payment of its two promissory notes, made on the same day, for $5,382.05 and $3,487.55, respectively, and

payable to the order of Sam G. Gill three months after date. The trustee was empowered, in case of default in the payment of the notes, to sell the land at public auction to the highest bidder, having first given twenty days' notice of the sale, and to execute a conveyance of the premises to the purchaser, applying the purchase money upon the notes after deducting the expenses of the sale, and rendering the excess, if any, to the land and cattle company. The trust deed was immediately placed on record. Before the 31st day of January, 1891, the company, by payments made upon the notes, reduced the amount of the indebtedness which they evidenced to $5,000. On the last mentioned day, Sam G. Gill, the payee, sold and transferred the notes to Francis E. Talcott. On the 20th day of April, 1892, E. L. Kellogg executed to the cattle company a deed of release of the real estate conveyed by the trust deed. The deed of release recited as its consideration, the full payment of the notes secured by the trust deed; it also recited that it was executed at the request of Sam G. Gill, the payee. It conveyed the title held by the trustee to the company. As a matter of fact, the notes were not paid. On the 24th day of May, 1892, the Grand Mesa company executed a mortgage of the same land to Thomas Lamb, to secure the payment to him, one year from that date, of $15,000 which he had loaned the company. After the maturity of the debt to him, but at what precise time we are not advised, Lamb instituted proceedings for the foreclosure of his mortgage. The result was a decree in his favor, in pursuance of which the land was sold, himself being the purchaser. Afterwards, but when, we do not know, Lamb sold and conveyed the land to The Delta County Land and Cattle Company, a corporation. In October, 1893, the plaintiff was informed of the fact,

and record, of the release. The last payment on the notes—which was a payment merely of interest due, —was received by Mr. Talcott in April, 1892. This suit to cancel the deed of release executed by Kellogg, and foreclose the trust deed securing the notes, was brought by Mr. Talcott on the 26th day of June, 1896. Kellogg, Lamb, The Grand Mesa Land and Cattle Company of Colorado, and The Delta County Land and Cattle Company, were made parties defendant.

The complaint averred that Lamb, with full knowledge that the land conveyed by the trust deed had been released without payment of the money secured upon it, and with intent to defraud the plaintiff, procured the foreclosure of his mortgage, took the title, and, for the purpose of making it appear that the land had passed to an innocent purchaser, conveyed it, without any consideration, to The Delta County Land and Cattle Company, upon which, at the time it received its deed, full knowledge of all the facts was charged.

When the plaintiff had introduced his evidence, the Delta company moved for a nonsuit. The motion was denied, and the company declining to offer any evidence in its own behalf, judgment was entered cancelling the deed of release, and ordering a foreclosure of the trust deed to Kellogg. From this judgment The Delta County Land and Cattle Company has appealed.

In the complaint, the plaintiff's right to relief against the act of Kellogg in releasing the land, is based on the fraudulent practices of Lamb, and the fraudulent acquiescence of the Delta company in his conduct. A decree is sought subjecting and subordinating the title held by that company to the lien of the trust deed to Kellogg, and the sole ground of the plaintiff's claim to such decree, as set forth in his

complaint, is that the Delta company acquired that title with full knowledge that it was procured by fraud, and for fraudulent purposes. I cannot discover in the evidence that Lamb was guilty of the conduct charged against him. It appears that a considerable time prior to the execution of the mortgage to him, he knew of the existence of the trust deed to Kellogg, and knew that the notes had been transferred to the plaintiff; but I am unable to find that when he secured the debt owing to him, he knew or suspected that Kellogg's release did not speak the truth. But conceding that upon the question of Lamb's good faith, the evidence might afford room for a difference of opinion, there was nothing presented to subject the conduct of the Delta company to the slightest suspicion. That it knew anything beyond what the records disclosed, nowhere appears. Upon the plaintiff's own theory of his case, as outlined in his complaint, he is not entitled to relief, and the judgment below should be reversed. But other questions are pressed upon us for decision, and in view of their importance, I deem it well to consider them. These questions are now presented for the first time to this court, and I am unable to find that they have ever been passed upon by the supreme court.

In a number of cases, we have held deeds of release, executed by trustees without payment of the money secured, and without authority from the holder of the debt, to be invalid even as against purchasers who had no actual knowledge of the facts. These cases seem to be relied upon with considerable confidence by the plaintiff; and they will receive attention later. First, however, it will be in order to outline the features of the case before us.

The Grand Mesa Land and Cattle Company by its trust deed of October 19, 1889, conveyed to Kel-

logg the legal title to the land. He was invested by
the deed with power in case of default in the pay-
ment of the debt, to make public sale of the land and
execute a deed to the purchaser. He had no power
except that conferred by the deed; and his convey-
ance to the purchaser at a sale, made in accordance
with the requirements of the trust deed, was the only
conveyance which that instrument authorized him to
make. But he held the legal title, and that title he
might vest in another by ordinary deed of convey-
ance, without the execution of the power, and without
special authority from any source.—*Stephens v. Clay,*
17 Colo. 489.

When the debt which a trust deed secures is fully
paid, the power of the trustee is extinguished, and
the owner of the equity is entitled to a reconveyance
of the legal estate. The trustee's deed to a stranger
would simply invest the latter with the title the for-
mer had. The owner of the equity and the owner of
the secured debt would be equally unaffected by it.
But a release to the owner of the equity would unite
both titles in him. In case the debt has been paid,
no question can arise upon the deed of release; but
if the debt has not been paid the release is fraudu-
lent. It is no release so far as the owner of the equity
is concerned; but his relation to the instrument does
not determine the status of an innocent purchaser
from him.

It is provided by our recording act that all deeds
or conveyances of, or affecting title to, real estate,
or any interest therein, may be recorded in the of-
fice of the recorder of the county wherein the real
estate is situate, and from and after their filing for
record, and not before, they shall take effect as to
subsequent *bona fide* purchasers and incumbrancers
not having notice thereof.—1 Mils' Ann. Stats., sec.
446.

A deed of release is a deed affecting title to real estate within the meaning of the foregoing provision. It conveys a title; and when it is recorded, its effect, as to subsequent purchasers, is the same as that of any other recorded conveyance. A purchaser of real estate is bound to know what the records disclose concerning the title; and if they indicate the existence of some outside condition by which it may be affected, he is bound to investigate; and he is charged with knowledge of the facts to which the investigation would lead. But if, upon their face, the records are complete, and show that the title is good, in the absence of information to the contrary from any other source, he may safely rely upon them.—*King v. Ackroyd,* 28 Colo. 488, 66 Pac. 906; *Porter v. Mc-Nabney,* 77 Ill. 235; *Ogle v. Turpin,* 102 Ill. 148; *Howard v. Ross,* 5 Ill. App. 456; *Perkins v. Adams,* 16 Colo. App. 96, 63 Pac. 792.

In *Bank v. Miner,* 9 Colo. App. 361, the recorded release showed upon its face that it was executed at the request, not of the holder of the debt secured, but of a party who had, apparently, no right to make the request. This fact we held sufficient to put a subsequent incumbrancer upon inquiry. In *Kenney v. Bank,* 12 Colo. App. 24, the facts disclosed by the record were that the trustee advertised and sold the land conveyed by the trust deed some seven months before the note which the deed secured was due. The payee of the note—The Colorado Securities Company—purchased the land and received a deed, from which afterwards it caused its name to be erased, and the name of a stranger substituted as grantee. The deed recited a consideration of twenty-five dollars. The land was worth over $12,000. This stranger then made his promissory note to The Colorado Securities Company for $4,000, and secured it by trust deed of the land. The note was sold to Kenney. The origi-

nal note was sold long before its maturity to the bank, and the foreclosure of the trust deed securing it was made without the consent or knowledge of the bank. Our judgment was that Kenney, the purchaser of the second paper, was bound to take notice that the foreclosure of the first deed of trust was undertaken before the maturity of the note it secured, and that land worth twelve thousand dollars was sold for twenty-five dollars; and that, having notice of these facts, he was bound at his peril, before purchasing the second note, to ascertain by outside inquiry, that the sale was legitimate, and untainted by fraud. In *Harker v. Scudder*, 15 Colo. App. 69, 61 Pac. 197, William Gorringe executed a trust deed to Alonzo Rice, as trustee, conveying to him certain lots in the city of Denver to secure the payment of his promissory note to Mrs. Scudder for $1,500, dated December 29, and due one year after date. Afterwards, Gorringe borrowed $2,000 more from Mrs. Scudder, made his note to her for the amount, dated April 1, 1891, due one year after date, and secured it by another trust deed of the same property to Rice. Two months afterwards, Gorringe applied to Mrs. Harker for a loan of $2,000, offering to secure it upon the same lots. Mrs. Harker's agent, in examining the title, discovered the two trust deeds to Rice, and she declined to make the loan unless some portion of the property should be released from the lien of those deeds. Thereupon Rice, without the knowledge of Mrs. Scudder, and without the payment of any of the money secured to her, executed to Gorringe a deed releasing four of the lots from the lien of her two trust deeds, reciting that a portion of both notes had been paid. Thereupon Mrs. Harker loaned the two thousand dollars to Gorringe, taking his note for the amount, and, to secure its payment, a trust deed of the four lots released by Rice. Subsequently, Mrs.

Scudder, having discovered that the lots had been released, brought suit to annul the release and reinstate her trust deeds as first liens upon the property. We affirmed the judgment below annulling the release and reinstating the deeds of trust. We held that the fact that the notes were not due, and the further fact that the deed arbitrarily released a portion of the property from the lien of each trust deed, were sufficient to put Mrs. Harker on inquiry. Wilson, J., delivered the opinion of the court, and inasmuch as that opinion is made the subject of considerable comment, I quote from it as follows: "Considering the case purely upon equitable grounds, Mrs. Harker was not an innocent incumbrancer. She knew from the records, or should have known, that the sole power with which Rice, as trustee, was invested, was to sell the property in case of default by Gorringe in payment of the principal of the notes when due, or of the interest, according to its terms. Under the provisions of the instrument, Rice acquired no power whatever, either express or implied, either by the terms of the trust deed or by operation of law, to execute a release deed before the maturity of the debt. Much less did he have any authority to release a part of the property. from the operation of the deeds of trust. These were powers which he could exercise only by the express authority of Mrs. Scudder, the owner and holder of the notes, and also of the deeds of trust. This was amply sufficient to have put Mrs. Harker upon her guard. She knew that the notes were executed to Mrs. Scudder, and it was her duty, in order to have protected herself, to have made some investigation or inquiry of Mrs. Scudder, in order to have ascertained whether this power, which was absolutely essential and necessary in order to validate the deed of release, had been given by her. This she did not

do, but relied solely ·upon the recitals in the release deed.''

In that opinion we reiterated what we have frequently said before, and what the supreme court has strongly expressed in *Improvement Co. v. Whitehead,* 25 Colo. 358, namely, that the powers of a trustee depend entirely upon the terms of the instrument appointing him, and no power is conferred unless expressed in the writing. We also said that the authority to execute a release deed is necessarily incident to, and dependent upon, the power vested by the trust deed; that what would destroy or defeat the power to sell, would create the right to release, and that it is only after the power is extinguished by payment that it is possible for the trustee to reconvey the title discharged of the incumbrance. We also approved an expression in the opinion in *Bank v. Miner, supra,* that without authority from the party for whose benefit the trust deed was given, the act of the trustee in releasing it was void. Every utterance of a court must be interpreted by the facts to which it is applied. Under the facts of Harker v. Scudder, it was not possible for the trustee to reconvey the title discharged of the incumbrance, and under the facts of Bank v. Miner, the act of the trustee in releasing the land without authority from the party for whose benefit the trust deed was given, was . void. However, as an abstract proposition, the truth of the statement that a release deed executed without payment of the money secured, or without the request of the owner of the debt, is of no effect, may safely be affirmed. But the question of the right of Mr. Kellogg to release the land in controversy here, or of the effect of his deed upon the title, is not the question to be now determined. The question before us is whether, under the provisions of our recording act, when the record shows a complete and regular chain

of title, a purchaser without any knowledge of the title, except what the record imparts, will be protected in his reliance upon the record.

In each of the cases I have reviewed, the record disclosed some circumstance calculated to excite suspicion, and which demanded inquiry outside of the record; and in each case the necessity of such inquiry, to warrant the proposed purchase or incumbrance, was emphasized in the opinion. But in the case at bar, there was nothing on the face of the record to indicate an imperfection in the title. The debt was past due, the release recited its payment, and persons proposing to invest in the property had the right to presume that, being overdue, it was paid. There is a legal presumption that parties perform their contracts. Upon the record Kellogg appeared to have the proper authority to execute the release. The presumption was that he had such authority, and the record itself did not, nor did it point to anything which did, indicate that a purchaser might not safely rely on the presumption. It has never been held by the supreme court, or by this court, that a person who is not chargeable with knowledge of a defect, and who finds a clear and perfect title upon the record, purchases, nevertheless, at his peril; and such is not the law.

The remaining case to which reference is made— *Barstow v. Stone,* 10 Col. App. 396—is not in point. The only question there was whether a successor in trust could execute a valid release, when no contingency had arisen upon which, by the terms of the trust deed, the title held by the trustee might become vested in him. We held that, having no title, he could convey none; but we declined to pass upon the question of superiority of equity, because it was not in the case.

If not directly, at least by very strong implica-

tion, our supreme court has held that where the records disclose nothing to impeach the release, a purchaser for value, without notice that the instrument was unauthorized, and without notice or knowledge of anything which made it his duty to inquire into the truth of its recitals, will be protected in his purchase. The following were the facts in the case of *Appelman v. Gara,* 22 Colo. 397: Shugart executed a trust deed to Griswold to secure the payment to Gara of a note for $1,200. Shugart sold and conveyed his equity to Lack, Lack conveyed to McIntyre, McIntyre to Hoffman, and Hoffman to Griswold, the trustee. Without payment of the note, and without authority from its holder, Griswold executed and placed on record a release deed to Shugart which recited that the note had been paid. Griswold then executed a trust deed of the property to McAdams, as trustee, to secure the payment to Appelman of $1,400. Gara brought suit against Appelman, Griswold and others to set aside the release, and establish the priority of the lien of his own trust deed. The court below awarded him the relief he sought, and in affirming its judgment, the supreme court spoke as follows:

"From the foregoing statement it will be seen that the trust deed to Griswold, given to secure the payment of the note of $1,200 to Gara, constituted a prior lien upon the property, and the execution of the release deed by Griswold to Shugart, without the payment of the note or the express authority of the holder, was an unwarranted exercise of power on his part, and was ineffectual to destroy Gara's lien as between him and the grantor, and subsequent purchasers with notice of such abuse of power. The only question, therefore, to be determined is whether Appelman had such notice, or its equivalent, by being put upon inquiry by anything contained upon the re-

cord of the title to the lot.   That he did not have
actual notice may be conceded, but that he had be-
fore him what was equivalent, namely constructive
notice from the record, admits of no doubt.   The
original trust deed, of which he was bound to take
notice, disclosed a contract by which the debt thereby
secured was not due at the time its release was at-
tempted.   And by sundry mesne conveyances in the
line of his title he was notified that the equity in the
lot was vested in Griswold, the trustee, subject to this
trust deed, and held by him subject to this security
at the time the release was executed and recorded;
that the release to Shugart, who at the time had no
interest in the property, was in effect a release to
himself.   Under this condition of the title, if the
trustee's power was not extinguished, it is evident
that its exercise was a gross violation of his trust.
*   *   *   With notice, therefore, of the conveyances
through which Griswold became vested with the
equity in the lot, and of the release of the trust deed
by him while such owner, and before the maturity of
the note secured thereby, appellant was apprised of
facts sufficient to cast a suspicion upon the *bona fides*
of the transaction, and put him upon inquiry whether
the plaintiff's note had in fact been paid; and he
cannot, after ignoring these facts, and dealing
directly with the unfaithful trustee in relation to the
trust property, invoke the doctrine that courts of
equity extend to innocent purchasers without notice.''

The foregoing language is hardly susceptible of
an interpretation in harmony with the theory of
plaintiff's counsel.   Upon that theory, the statement
that the release was ineffectual to destroy Gara's
lien as between him and the grantor, and subsequent
purchasers with notice of the abuse of power, is
meaningless, because, if the release was an absolute
nullity, it would be immaterial whether purchasers

had notice or not; and, in saying that the only question to be determined was whether Appelman was chargeable with notice, and denying his right, with the facts he knew, or ought to have known, to invoke the doctrine that courts of equity extend to innocent purchasers, the court involved itself in singular confusion, if, notwithstanding there is nothing upon the the record, or within the knowledge of a purchaser, to excite a suspicion of irregularity, he must, at his peril, ascertain whether the recitals of the release are true. According to counsel's contention, whether Appelman had notice, instead of being the only question, was not a question at all; and the reference to the doctrine which courts of equity apply to innocent purchasers was idle talk. If there can be no innocent purchaser under a fraudulent release, the court could have disposed of the case in a few words by simply saying so; and it is not supposable that with a direct, easy and effectual solution before it of the question involved, it went out of its way to find a subterfuge on which to rest its decision.

Upon the evidence, as it is presented in this record, I think the deed of Lamb to The Delta Land and Cattle Company vested a good title in the latter, and that the court erred in cancelling the deed of release.

Let the judgment be reversed.    *Reversed.*

WILSON, P. J., concurs.

GUNTER, J., dissenting.

The Grand Mesa Land and Cattle Company made two promissory notes payable to Gill, and secured the same by trust deed on real estate to Kellogg, as trustee; this, recorded, authorized the trustee to sell on default of payment of notes. The notes were assigned to appellee, plaintiff below. There-

after Kellogg executed a release purporting to discharge the trust deed, reciting payment of the notes, and that the same was made at the request of Gill. Payment had not been made, nor had appellee requested the release.   One month after recording of this release the above company mortgaged the land to Lamb; mortgage was foreclosed, Lamb being the purchaser; thereafter Lamb conveyed to appellant.

This proceeding is to cancel the unauthorized release.

Is the release operative against appellee?

The public records charged Lamb and appellant with notice of the trust deed and its provisions.

"The powers of a trustee depend entirely upon the terms of the instrument appointing him, and no power is conferred unless expressed in writing."— *The Bent-Otero Improvement Co. v. Whitehead,* 25 Colo. 358, 54 Pac. 1023; *Kenney v. Bank,* 12 Colo. App. 33, 54 Pac. 404.

The trustee had by the trust deed express power under certain conditions to sell and convey the equitable estate of the trustor; by the same instrument, as an incident to this power, he was impliedly authorized, upon certain conditions, to execute a release discharging the lien of the trust deed.—*Harker v. Scudder,* 15 Colo. App. 69, 61 Pac. 197, 1 Colo. Decisions 670.

"Whatever restrictions or limitations there are upon the expressed power (to sell) it logically follows, attach to all incidents of it (the power to release)."—*Harker v. Scudder, supra.*

In *Improvement Company v. Whitehead, supra,* the trust deed secured a note; the power to sell of the trustee therein was conditioned on the request of the beneficiary; the trustee foreclosed without this request, selling to a third party.   At the instance of the beneficiary the sale was vacated on the ground

that the trustee had no authority to act. It was further held that the innocent purchaser was charged through the record of the trust deed with notice of the limitations on the trustee's powers, and that if he bought in the absence of a performance of the conditions precedent authorizing the trustee to sell, the sale was void. Further, that the recitals in the trustees deed of the satisfying of such conditions did not prove them complied with nor protect the purchaser. The court in the course of its opinion says:

"The assignments of error present but one question, and that is whether a trustee named in a deed of trust, wherein the power of sale is conditioned upon the request of the beneficiary, can sell the land and convey to the purchaser a good title without such request, or without any circumstance from which the purchaser could infer such request on his part. The powers of a trustee depend entirely upon the terms of the instrument appointing him, and no power is conferred unless expressed in writing. Such request, therefore, becomes a condition precedent to his power to sell; and since the rule of *caveat emptor* applies to trustees sales, the purchaser is bound to take notice that all matters *in pais* upon the existence of which the trustee's power to act depends have been complied with."

In *Kenney v. Bank*, 12 Colo. App. 24, 54 Pac. 404, it is said: "The trustee in a deed of trust is clothed with no powers save those which are expressed in writing, and if his authority to act is dependent upon matters *in pais*, parties dealing with the trustee are bound to see that the authority is expressly given by the instrument and that the facts exist which authorize the trustee to act."

It is clear from the authorities that the trustee cannot by sale convey the equitable estate of the trustor or discharge the lien of the beneficiary, under

the trust deed, without complying with the conditions precedent to the exercise of such power. This is true although the purchaser be innocent and the recitals in the trustee's deed declare that he has complied with all conditions precedent in making the sale.

"Parties dealing with the trustee are bound to see * * * that the facts exist which authorize the trustee to act."—*Kenney v. Bank, supra.*

If this be true, that is, that the trustee cannot by foreclosure convey the equitable estate of the trustor, or affect the lien of the beneficiary, without observance of the conditions prerequisite, and, if it be further true, that the power to release is from the same instrument, the trust deed, and that "whatever restrictions or limitations there are upon the expressed power (to sell) it logically follows attach to all incidents of it (the power to release)," how can it be that the trustee can execute a release discharging the lien of the trust deed without complying with the terms of the instrument whereby he derives his authority, and of which instrument and its limitations on the powers of the trustee all parties, by the public records, have notice? The same principle of law which renders the doctrine *caveat emptor* applicable to a purchaser under a trustee's sale ought, and it seems upon authority does apply to releases by a trustee. The reason for the rule in both instances is the information as to the agent's authority furnished by the recorded trust deed.

As I understand the former decisions of this court they sustain this conclusion. In *Harker v. Scudder, supra,* a trust deed to secure a note, with power to the trustee upon certain conditions to sell, was given upon certain lots. A release deed was executed as to certain of the lots, which recited as a consideration therefor, that the payor had discharged part of the secured note, and that the release was

made at the request òf the payee therein.    These recitals were untrue.    The release was recorded.    Subsequently a trust deed to secure a new note payable to an innocent party was taken upon the released lots. The beneficiary under the first trust deed brought suit to cancel the release.    It was contended by the beneficiary under the second trust deed that she was justified in relying upon the record of the release deed and recitals therein.    The court cancelled the release deed and said:

"Whatever may be the rule in other states, and whatever may be the conflict of authority, the rule with reference to the pivotal and decisive question in this case has been positively settled in this jurisdiction by harmonious decisions in both appellate courts. This rule as laid down in *Kenney v. Bank,* 12 Colo. App. 33, 54 Pac. 404, is: "It is undoubtedly true (and in this all the authorities agree) that a trustee by written instrument is clothed with no powers save those which are expressed in the writing; and if his authority to act is in any wise or at all dependent upon matters *in pais,* the parties dealing with the trustee are bound in the one case to see that the authority is expressly given by the instrument, and in the other that those facts exist which authorize the trustee to act."    In a later case this was quoted approvingly by our supreme court. *Improvement Co. v. Whitehead,* 25 Colo. 358, 54 Pac. 1024.    In this case the supreme court also says: "The powers of a trustee depend entirely upon the terms of the instrument appointing him, and no power is conferred unless expressed in the writing."    In *Bank v. Miner,* 9 Colo. App. 367, 48 Pac. 839, the court said: "Without authority from the party for whose benefit the trust deed was given, the act of the trustee in releasing it was void."    Applying this rule to the case at bar, it being undisputed that Mrs. Scudder did not

authorize Rice to execute the release deed, it is clear
that the deed was not effectual to discharge the in-
cumbrance.   It is true that, strictly and technically
speaking, the execution of the release deed was not
in the exercise of a power expressly vested in the
trustee by the deed of trust.   The power specially
given was to sell in default of payment of the debt by
the debtor, and this power could only be extinguished
by payment.   The authority to execute a release deed
is, however, a necessary incident to, and dependent
upon, this power.   That which would destroy or de-
feat the power to sell would create the right or au-
thority to release, which is simply a reconveyance
by the trustee to the grantor of the title to the prop-
erty after the fulfillment of the trust.   It is only,
however, after the trust is carried out, and the power
to sell extinguished by payment, that it is possible
for the trustee to reconvey the title discharged by the
incumbrance.   Whatever restrictions or limitations
there are upon the expressed power, it logically fol-
lows, attach to all incidents of it.   Moreover, consid-
ering the case purely upon equitable grounds, Mrs.
Harker was not an innocent incumbrancer.   She
knew from the records, or should have known, that
the sole power with which Rice, as trustee, was in-
vested, was to sell the property in case of default by
Gorringe in payment of the principal of the notes
when due,   *   *   *.   Under the provisions of the
instrument, Rice acquired no power whatever, either
express or implied, either by the terms of the trust
deed or by operation of law, to execute a release deed
before the maturity of the debt.   Much less did he
have any authority to release a part of the property
from the operation of the deeds of trust.   These were
powers which he could exercise only by the express
authority of Mrs. Scudder, the owner and holder of
the notes, and also of the deeds of trust.   This was

amply sufficient to have put Mrs. Harker upon her
guard. She knew that the notes were executed to
Mrs. Scudder, and it was her duty, in order to have
protected herself, to have made some investigation or
inquiry of Mrs. Scudder, in order to have ascer-
tained whether this power, which was absolutely es-
sential and necessary in order to validate the deed of
release, had been given by her. This she did not do,
but relied solely upon the recitals in the release
deed.''

I have quoted thus at length the portions of the
opinion pertinent to the questions before us, that it
may be seen how the court reasoned, and what it
ruled. It seems to me that the ruling there made, and
the reasoning therein justifying such ruling, if ap-
plied to the facts of the case under consideration,
would necessitate a cancellation of the Kellogg re-
lease deed.

*In Kenney v. Bank,* 12 Colo. App. 25, 54 Pac.
404, the facts, so far as material to one of the grounds
of the ruling therein, were: A trust deed securing a
note was foreclosed without the knowledge or consent
of the beneficiary, the bank; a trustee's deed placed
of record, and a note and trust deed executed by the
grantee hypothecated for value to another party,
Kenney. On application of the beneficiary under the
foreclosed trust deed, the bank, the foreclosure was
set aside. One of the grounds for granting the re-
lief was that the trustee had no power to make the
sale; this it was held vitiated the sale even as against
Kenney who took the note and trust deed without
knowledge that the trustee had not complied with
the conditions prerequisite to the sale. The court
said:

''It was Kenney's duty to see not only that the
power was granted but that the facts which author-
ized its exercise likewise existed. Under the proof

neither existed.  The note was not due, and therefore the trustee had no authority to sell to enforce the payment of it, unless there had been a default in the payment of the interest, and the holder had elected to declare the whole sum due.  The latter was undoubtedly a matter *in pais*.  The logical deduction is that as an original proposition the sale was wholly and totally invalid, did not affect the bank's title, nor by the execution of the security by Duffy did Kenney acquire any interest.   *   *   *   We therefore conclude upon these authorities that there was enough in the transaction to put Mr. Kenney upon inquiry, and that he was not an innocent purchaser for value without notice, *and that even had he not been put upon inquiry by these matters,* the trustee had no authority to sell when he did.  The facts which were prerequisite to the exercise of such *authority did not exist.   This being true the trustee could in no way dispose of or incumber the property to the disadvantage of the original lienor.*  The lien of the Jefferson County Bank was therefore superior to that held by Mr. Kenney.''

In *Bank v. Miner,* 9 Colo. App. 362, 48 Pac. 837, the facts so far as material to this citation are: The note of Miner, payee First National Bank, with Shimer thereon as surety, with reference to Miner, was secured by a trust deed.  This recited its giving to secure the note, and to secure Shimer in his suretyship.  A release of the trust deed was executed by the trustee wherein he recited payment of the note and that the release was executed at instance of Shimer.  The note had not been paid and the payee therein, the bank, had not authorized the release of the trust deed.  While the release was of record a trust deed was executed to secure a third party.  The beneficiary under the first trust deed, the bank, brought suit to cancel the release.  The court said:

"The release executed by Morse recited that W. A. Miner had fully paid and satisfied the original note. This recital was not true. * * * At the time the release was written it was unpaid, and it is still unpaid. The release also recited that it was made at the request of Frank Shimer. Shimer had no authority to order a release. As he had not paid the debt, the security did not belong to him. Its release could be legally authorized only by the bank, the holder of the debt; and the paper did not purport to be executed by its authority. Without authority from the party for whose benefit the trust deed was given, the act of the trustee in releasing it was void. The mortgage to the Union Bank of Greeley was executed before this supposed release was made; but even had it been executed subsequently, as was the case with the mortgage to Bronk, the recital in the releasing instrument that it was executed at Shimer's instance, and the absence of any appearance of authority from the owner of the debt, would have made it its duty to inquire into the facts, if it intended its mortgage to be a prior lien."

Judgment was entered cancelling the release. If the note secured by the first trust deed had been paid then the release was properly executed, and was effective in discharging the lien of the trust deed. If the recitals in the recorded release were conclusive upon the beneficiary under the first trust deed, First National Bank, as to the fact of payment, then the release could not be questioned at the instance of such beneficiary, yet, at the instance of such beneficiary the court cancelled the release deed. In effect its holding was that the release was void because unauthorized by the beneficiary under the trust deed; that the recitals in the release deed, of payment of the note, although the release was recorded, were not proof of such fact in favor of a subsequent incumbrancer.

In *Barstow v. Stone,* 10 Colo. App. 396, 52 Pac. 48, the release deed was executed by a successor in trust; it recited facts which, if true, authorized him to execute the release deed. This went of record. The facts recited as to his authority to act were false. At the instance of the beneficiary under the trust deed released, the release was cancelled against a subsequent incumbrancer for value without knowledge of the falsity of the facts recited in the release deed.

As to *Appelman v. Gara, supra,* it was not necessary for the court to decide therein the question before us, and in my opinion it did not decide it. The release was cancelled upon the ground that the facts were sufficient to charge a subsequent innnocent purchaser with notice.

If section 446, 1 Mills' Ann. Stats., validates the release deed in the present case as against appellee, Talcott, and in favor of appellant, I am unable to see why it did not cure the various unauthorized instruments placed of record in the above cases. This section, in my judgment, has no greater effect upon the release deed in the present case than it would have upon a forged instrument.

Three Illinois cases are cited in support of the opinion of the court herein. In my judgment they are not in point. In *Porter v. McNabney,* 77 Ill. 235, the grantor in the trust deed securing the note conveyed the encumbered premises to the party shown by the records to be the holder of the note thus secured. To this beneficiary the trustee likewise released. The laws of Illinois required an assignment of the note secured by trust deed to be placed of record to render such assignment of the note and trust deed valid against innnocent parties. The land was conveyed by the party shown by the records to be the holder of the note and to whom deed of release was executed, and to whom the grantor in the trust deed had conveyed

his equity, to an innocent third party. The court declined to cancel the release deed at the instance of the one claiming to hold the note secured by the trust deed, and who claimed the release as unauthorized, the reason being that every one shown by the records to be interested in the trust deed, that is, the beneficiary thereunder, the trustor and the trustee had all in effect, by the several conveyances, consented to the release. The beneficial interest of the record holder of the note, the equitable interest of the trustor, and the legal interest of the trustee had all united in the party shown by the recitals to be the beneficiary under the trust deed. Had the assignee of the note placed his assignment of the note and trust deed of record, a different question would have been presented.

Our statute did not require appellee, Talcott, to record his assignment of the note or trust deed; such recording was not necessary to protect the assignment to him against a subsequent lienor.—*Kenney v. Bank, supra.*

A statement of the facts in *Ogle v. Turpin,* 102 Ill. 148, distinguishes it from the case before us. Runyan held notes payable to himself by Allen secured by mortgage on lands. The notes Runyan endorsed to Ogle. The statute required the assignment of the notes and mortgage to go of record in order to be valid against third parties without notice. This was not done. Runyan obtained a deed for the mortgaged premises from Allen. Runyan thereupon, without the knowledge or consent of Ogle, on his (Runyan's) apparent title, which appeared perfect of record, obtained a loan from another party giving trust deed with usual power of sale to secure the same. Ogle brought suit to foreclose his released mortgage. The court dismissed the bill, upholding the release. The court *inter alia* said:

"As the record stood it showed that Runyan was the owner of the title free from encumbrances. The assignment of the notes operated as an equitable assignment of the mortgage, and the assignment was an instrument that related to or affected the title of the land, and to be come operative as to creditors and purchasers the assignment of the mortgage should have been formally made and recorded to charge notice to all persons dealing with the title, or at least the assignment on the note should have referred to the mortgage, and that assignment should have been recorded. As between the parties the mere assignment without recording was all that was required to assign the mortgage, but as to strangers it was otherwise."

As our statute did not require an assignment of the notes and mortgage to Talcott placed of record to make it effectual as to strangers, Lamb was not justified from the silence of the record in believing that Gill was still the owner of the notes and the proper party to authorize the release.

In *Howard v. Ross* the release was executed by the party alone entitled, according to the records, to execute the release, and was authorized by the only party, according to the records, entitled to authorize the release. The assignee of the securities in such case, as in the two Illinois cases, had failed to effectuate his assignment as to strangers by complying with the statute requiring its record.

The facts herein summed up are: Appellee held a note secured by a recorded trust deed; without his knowledge or consent the trustee executed and placed of record a release. Thereafter appellant, by mesne conveyances from the trustor, acquired the encumbered property. Appellee asks, appellant resists, the cancellation of the fraudulent release.

The appellee has done all the law required of him to preserve his security; he is without fault.

Through the public records appellant knew of the trust deed and of the limitations therein placed upon the powers of the trustee; it knew the law to be that the trustee had no power to release without the consent of appellee; it knew that the facts constituting this consent rested *in pais;* that if it relied on the existence of these facts without investigation it did so at its peril.

"If the validity of the deed depends on an act *in pais,* the party claiming under that deed is as much bound to prove the performance of the act as he would be bound to prove any matter of record on which its validity might depend. It forms a part of his title; it is a link in the chain, which is essential to its continuity, and which it is incumbent on him to preserve. These facts should be examined by him before he becomes a purchaser, and the evidence of them should be preserved as a necessary muniment of title."— *Williams v. Peyton,* 4 Wheaton 77, approved in *Kenney v. The Bank* and in *Improvement Company v. Whitehead, supra.*

"There is no principle which substitutes the declaration of the trustees, however solemnly made, in place of the fact which could alone authorize them to recover. The purchaser, if he would be safe, must not content himself with the recital that the trusts have ceased, but must ascertain at his peril whether such is the case."— *Briggs v. Davis,* 20 N. Y. 15.

Although forewarned by the contents of the trust deed and the law, appellant made no investigation as to the existence of facts authorizing the trustee to release. The trustee had no authority to release. Appellant, the party in fault, is the one who should suffer by the fraudulent release.

It was not the purpose of our recording act to give validity to a forged or unauthorized instrument. The records might contain a forged deed; an innocent

purchaser might become the grantee thereunder, yet, it would not be contended that our recording act would give validity to the forged instrument and deprive the true owner of the same through such forged deed. A public record is not a warranty of title, but is merely a means afforded by law of giving constructive notice to the world of the execution of any given instrument appearing thereon, leaving the question of validity of such instrument, should the same become material, to be determined wholly independent of the record itself.

In my opinion the judgment of the lower court should be affirmed.