DAVIS, Circuit Judge.
 

 The Claims Court refused to reform appellant’s Government contract, a reformation sought because of a mutual mistake in costs, on the ground that the Government had not undertaken to bear the risk of the mutual mistake the parties made. We reverse.
 

 I.
 

 Appellant, Bowen-McLaughlin-York Company (BMY) entered (on March 31, 1977)
 
 *1222
 
 into a letter contract with the United States Army Tank-Automotive Readiness Command of the Department of Defense (TA-COM) for production of M88A1 tracked recovery vehicles and conversion kits to modify existing M88 vehicles. This letter contract was intended to serve as an interim agreement permitting BMY to commence performance prior to formalization of all the terms and conditions of the definitized contract. The letter contract contained a clause providing that the Government would pay increases in the cost of materials due to escalation. Later, the letter contract was transformed by agreement into a redeterminable price contract which contained both a billing price ($280,000 to $285,000 per vehicle) and a ceiling price ($300,000 per vehicle) accepted by both parties. The parties were later to agree upon the exact price, limited by the ceiling. This redeterminable price contract governed performance.
 

 BMY’s current claim is that certain escalation costs on some purchased materials (amounting to about $700,000) were mistakenly omitted from the reported costs and the final agreed-upon price. Suit was filed in the Claims Court seeking reformation of the final contract, motions for summary judgment were denied, and a trial was held. The court then made findings of fact and held that appellant was not entitled to prevail because there was no compensable unilateral mistake and no mutual mistake making the Government liable; as to mutual mistake the court held that the final contract was a fixed-price one in which the contractor bore its own risks.
 
 Bowen-McLaughlin-York Co. v. United States,
 
 10 Cl.Ct. 223, 226 (1986).
 

 II.
 

 We by-pass the question of unilateral mistake because we hold that, as to the mutual mistake, this case is wholly governed by the Court of Claims’ decision in
 
 Southwest Welding & Mfg. Co. v. United States,
 
 373 F.2d 982, 989-91, 179 Ct.Cl. 39 (1967).
 
 Southwest Welding
 
 held that (a) where there is a mutual mistake concerning the terms of the written contract, departing from the parties’ actual understanding, the Court of Claims (and now the Claims Court) “like other courts” will normally grant reformation; (b) in that case, both the Government and the contractor intended that the contractor be compensated on the basis of the latter’s actual costs; (c) the written contract price for the particular item there involved understated (because of a mutual mistake) the actual costs of that item; (d) it made no difference to recovery via reformation that the contractor was negligent in understating the costs; and, finally, (e) reformation and recovery should be allowed.
 
 [1]
 

 The Claims Court distinguished
 
 Southwest Welding
 
 on the ground that that decision basically involved a cost-plus arrangement while the current contract was essentially a fixed-price one. 10 Cl.Ct. at 226-27. In this respect, we think the court erred. True, the end-price for the items now involved were fixed-prices set by agreement, but the same was the situation in
 
 Southwest Welding (see
 
 373 F.2d at 989-90). Nevertheless, the
 
 Southwest Welding
 
 court founded its ruling on the underlying fact that both the Government and the contractor intended that the latter be compensated on the basis of its actual costs. The definitization, in numbers, of the final price did not detract from that overall purpose, but was simply the end-result of the calculation of costs.
 

 The case is the same here. When the original letter contract was turned into a price redeterminable agreement it became a cost-reimbursable contract. In its findings, the Claims Court expressly found (10 Cl.Ct. at 229-30): “A price redeterminable contract is in essence, a cost reimbursable contract subject, in this particular case, to a fixed or nonredeterminable ceiling price.” The findings also state (10 Cl.Ct. at 231):
 

 
 *1223
 
 “As a redeterminable contract, Contract 0278 [the original letter contract], as modified by PZ0008 [creating the rede-terminable price contract], was intended to minimize cost risks to both parties. Cost risks were minimized because, to the extent possible, TACOM would pay and BMY would receive only actual costs. This was particularly true with regard to material costs which were, at the time the final price was negotiated, almost entirely under purchase order.”
 

 Another finding declares: “The purpose of changing Contract 0278 to a price redeter-minable contract was to decrease BMY’s forward pricing risks and thereby decrease the amount of contractor profit that TA-COM would otherwise have to pay.”
 
 Id.
 
 Also, just as in
 
 Southwest Welding,
 
 (373 F.2d at 990), the court found here (10 Cl.Ct. at 234) that “TACOM negotiators and price analysts testified that had BMY requested escalation on the Buckeye and Berwick purchase orders [the purchase orders involved in this case] and supported the request with appropriate data, TACOM would have agreed to include such escalation in the final negotiated price for materials.”
 
 [2]
 

 On the basis of the Claims Court’s own findings—which neither party attacks—we think it is as certain here as it was in
 
 Southwest Welding
 
 that, so long as the ceiling price was not exceeded,
 
 [3]
 
 the Government and the contractor intended that the contractor be compensated on the basis of the latter’s actual costs, and also that the “parties obviously wished the Government to bear the cost of the [items], whatever it was.” 373 F.2d at 991. Moreover, before trial the parties here stipulated that price adjustment “provisions are not used by TACOM in cost reimburseable contracts nor with fixed price redetermina-ble contracts, because the reimbursement or redetermination principles serve the same risk allocation function as [a price adjustment] provision.”
 
 [4]
 
 In particular, that risk allocation here means that the Government bears the risk of mistakenly omitted escalation costs.
 

 That BMY was negligent in failing to include the escalation in the costs it reported to TACOM, and that the company twice told TACOM that there was no escalation in the cost of the materials now in question, do not preclude reformation.
 
 Southwest Welding
 
 makes that crystal clear. 373 F.2d at 991.
 

 It follows that appellant is entitled to recover and the judgment of the Claims Court is
 

 REVERSED.
 

 [1]
 

 . Reformation is not allowed for a mistake in business judgment,
 
 Liebherr Crane Corp. v. United States,
 
 810 F.2d 1153 (Fed Cir.1987);
 
 United States v. Hamilton Enterprises, Inc.,
 
 711 F.2d 1038 (Fed.Cir.1983). The mistake in the current case was obviously not of that character.
 

 [2]
 

 . In addition, the findings show that (a) the purpose of the original letter contract was to permit BMY to commence performance prior to formalization of the definitized contract, (b) the letter contract itself provided for escalation, (c) such escalation was necessary for BMY to protect itself against rapidly escalating material costs, (d) as soon as it commenced performance under the letter contract, BMY began issuing purchasing orders for the necessary materials, and (e) BMY issued the purchase orders for the material involved in this case well before the negotiation of the final price to be charged the Government.
 

 [3]
 

 . In this case, the ceiling would not be exceeded even if the requested escalation costs are included.
 

 [4]
 

 . The record is plain that both parties agreed to this particular stipulation.