Frank K. HARTLE, Maxine E. Hartle
and Dawn M. Janes, Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 255–89L.

United States Claims Court.

April 26, 1991.

Gary J. Ceriani, Denver, Colo., for plaintiffs.

Marc Rothberg, Dept. of Housing and Urban Development, Denver Colo., for defendant, Alan Brenner, Washington, D.C., of counsel.

## MEMORANDUM OPINION

LYDON, Senior Judge:

This case is before the court after a trial on the merits regarding whether plaintiffs are entitled to rescission of a contract for purchase of a home from the government. For the following reasons, plaintiffs are not entitled to rescind the contract.

## FACTS

In May of 1986, the Department of Housing and Urban Development (HUD) advertised a large number of HUD-acquired properties for sale in two local Denver, Colorado newspapers, including a piece of

real property together with two structures situated thereon, located at 4673 S. Pennsylvania Street, in the city of Englewood, Colorado. The main structure contained, among other things, two bedrooms, a kitchen, and one bathroom. A detached structure located on the same residential lot contained one bedroom, a kitchen, and one bathroom.[1] A HUD official who inspected the property before listing it indicated on his Property Listing Disposition Report that the property contained three bedrooms and one and three-quarters bathrooms, and he recommended that the property be listed for sale at $66,500. Consequently, the newspaper advertisements described the property as "1360 sq. ft., 3 bdrm, 2 bath, 2 gar." The listed price was $66,500. The property was zoned R–1–C (single family residence district).

HUD's real estate broker for the subject property was Bob Walker Real Estate. In May of 1986, plaintiff Dawn Hartle Janes (Janes) had just received her real estate license and was employed by Bob Walker Real Estate. Plaintiff Janes saw HUD's advertisement of the subject property in the newspaper, and inspected the interior and exterior of both structures on the subject property on several occasions. On May 27, 1986, plaintiffs Frank and Maxine Hartle (the Hartles), parents of plaintiff Janes, offered HUD $73,500 to purchase the property, which offer HUD accepted on May 29, 1986.[2]

On August 4, 1986, HUD and the Hartles executed the closing documents to consummate the sale. Also on that date, HUD issued a Joint Tenancy Deed to the subject property to the Hartles and Janes as joint tenants. Plaintiff Janes did not execute the contract for the sale of the property. (See in this regard the court's prior opinion in this case, *Hartle v. United States*, 18 Cl.Ct. 479, 482 (1989)). Plaintiffs applied for and received HUD mortgage insurance based on their status as owner-occupants of the property. Neither plaintiffs nor defendant checked the zoning ordinance applicable to the property prior to closing.

On the date of closing, August 4, 1986, plaintiff Janes and her husband moved into the subject property and made personal use of the main house as well as the detached one-bedroom structure. Thereafter, in June of 1987, plaintiff Janes and her husband moved out of the subject property and rented it to tenants, who also made use of the detached one-bedroom structure. Defendant suggests that the zoning laws may have been changed with regard to the detached structure due to neighborhood complaints about tenant use of the detached structure after the Janes moved out, but the record is devoid of any evidence which would support a finding of fact in this regard.

On July 8, 1987, the city of Englewood sent copies of a "Zoning Verification Form" to the Hartles, who at the time resided in Littleton, Colorado, and to Janes and her husband, who at the time resided in Kailua–Kona, Hawaii. The form advised them that, according to section 16–4–4 O of Englewood's zoning ordinance, "[n]o structure or vehicle on the same lot with the dwelling shall be used for residential purposes. See attached for previous Board action on this property." This Form was most likely sent to plaintiffs as a result of neighborhood complaints regarding the tenants' use of the accessory structure.

The first attachment to the Hartles' Zoning Verification Form described a 1985 zoning action on the subject property. On March 25, 1985, a Notice of Violation was sent to John L. Preston (Preston), the owner of the subject property at the time. The Notice stated, in pertinent part: "No structure or vehicle on the same lot with the dwelling shall be used for residence purposes. The residence in the rear of your property will have to be vacated within thirty (30) days of receipt of this notice."

---

1. The kitchen in the accessory structure may have been removed after plaintiffs purchased the property, but in any event, the present dispute involves only the use of the bedroom in the accessory structure, not the kitchen.

2. Plaintiff Dawn Hartle Janes received a commission of $2,205 from Bob Walker Real Estate on the sale of the subject property.

At the time of the notice, Preston was renting the detached structure to a tenant.

The second attachment to the Hartles' Zoning Verification Form was a copy of a Zoning Verification Form that was issued and sent to Carolyn Preston on May 17, 1985, describing actions taken in 1972 with regard to the detached structure. The Preston's Zoning Verification Form was recorded in the county recorder's office on the date of issuance. The Form stated, in pertinent part: "Board of Adjustment and Appeals Case No. 1–72, heard on January 12, 1972 and additional hearing on May 10, 1972, stated the use of the premises is for single-family purposes only, but the kitchen may remain in the accessory structure as a second kitchen for the single-family use."

The 1972 zoning action referred to on the Preston's Zoning Verification Form was initiated when the owner of the subject property at that time, Clifford Kimball, requested a variance to permit two family use of the property, which was rejected by the city's Board of Adjustment and Appeals. In addition, the Board ordered Kimball to stop using the detached structure and to remove the kitchen in that structure. In response to Mr. Kimball's request for reconsideration, the Board reached the above-quoted determination, and allowed single-family use of the kitchen in the detached structure.[3]

On October 5, 1987, the Hartles applied for a zoning variance to allow the "structure on rear of premises to be used as bedroom for family." On December 7, 1987, plaintiffs received a letter from the city of Englewood, advising them as follows:

> The City of Englewood Board of Adjustment and Appeals has considered your request for a variance to permit the detached structure on the rear of the property to be used for sleeping facilities. This is a variance from the Comprehensive Zoning Ordinance, Section 16–4–O 1 (sic), General Provisions in the R–1–C, Single Family Residence District, which provision states "no structure or vehicle on the same lot with the dwelling shall be used for residential purposes."
> IT IS THE RULING OF THE BOARD, BY A UNANIMOUS VOTE, THAT THE ABOVE REQUEST IS DENIED.[4]

Plaintiffs filed suit in this court on May 5, 1989, seeking rescission of the contract based on mutual mistake of the parties that the property had three bedrooms and two bathrooms available "for residential use." [5]

---

3. Defendant reads the Board's decision in 1972 to allow "use of the premises ... for single-family purposes only, but the kitchen may remain in the accessory structure as a second kitchen for single-family use" as granting a variance which allowed single-family use of the third bedroom in the detached structure. Defendant reaches this conclusion by reading the phrase "use of the premises ... for single-family purposes" to include all structures on the property. The record does not support defendant's view, however. The evidence at trial clearly established that at least since 1972, the Board prohibited any use of the third bedroom in the detached structure, even by a single family.

4. At trial, defendant, in support of its position that the detached structure at the rear of the property could be used for sleeping facilities, presented as a witness an employee of the city of Englewood, who worked as a zoning code enforcement officer. This employee was of the opinion that the detached structure could, or should, be allowed to be used for sleeping facilities and so recommended to her superiors. Said recommendation was rejected both by the employee's superiors and by the zoning board. Obviously, defendant's position in this regard was not supported by any persuasive evidence, as the employee's testimony and related documentation was the only significant evidence submitted by defendant in support of this position.

5. In its post-trial brief, defendant argues that the court lacks jurisdiction to grant rescission and restitution in this case, because plaintiffs' complaint does not concern a pre-award contractual situation. However, defendant's view of the court's equitable jurisdiction is too narrow. The court's equitable jurisdiction extends to rescission and reformation, and is not limited to pre-award bid protest situations. See Bowen–McLaughlin–York Co. v. United States, 813 F.2d 1221, 1222 (Fed.Cir.1987); Rash v. United States, 175 Ct.Cl. 797, 360 F.2d 940 (1966); National Presto Indus., Inc. v. United States, 167 Ct.Cl. 749, 338 F.2d 99 (1964), cert. denied, 380 U.S. 962, 85 S.Ct. 1105, 14 L.Ed.2d 153 (1965); Edwards v. United States, 19 Cl.Ct. 663, 674 (1990).

In an earlier opinion in this case, in which the court ruled on defendant's motion to dismiss, the court explained that it has jurisdiction to hear plaintiff's complaint, as the complaint

Plaintiffs seek a return of the purchase price of $73,500 plus closing costs of $4,881.12. In their post-trial brief, plaintiffs concede that any award they receive for closing costs should be reduced by $2,205, the amount of commission Dawn Janes received in connection with the transaction. Plaintiffs also seek damages of $11,751.28, which represents lost rental income of $7,980.31 and cost of improvements to the property of $3,770.97.

## DISCUSSION

The two issues in this case are whether the parties entered into the contract for sale of the subject property under a mutually mistaken belief that the property had three bedrooms and two bathrooms available for single-family residential use, and, if so, which party is to bear the risk of such a mistake.

### A. Mutual Mistake

Plaintiffs maintain that the parties' mutual mistake with regard to the permissible use of the accessory structure resulted in a failure of the purpose of the contract, that is, to convey a piece of real estate with three bedrooms and two bathrooms. Plaintiffs point to the fact that the town has prohibited them from using the bedroom and bathroom in the detached structure even in conjunction with single-family use of the main house. Defendant, on the other hand, maintains that, at the time of closing, the city of Englewood's zoning ordinance allowed plaintiffs to use the detached structure in conjunction with single-family use of the main house, and that any change in zoning occurred long after closing.

At the outset it should be recognized that "courts generally, as well as this court, have been wary in granting relief from innocent mutual mistakes imbedded in, or underlying, consummated contracts." *Na-tional Presto Indus., Inc. v. United States*, 167 Ct.Cl. 749, 761, 338 F.2d 99, 106–07 (1964), *cert. denied*, 380 U.S. 962, 85 S.Ct. 1105, 14 L.Ed.2d 153 (1965); *Edwards v. United States*, 19 Cl.Ct. 663, 676 (1990); *Gould, Inc. v. United States*, 19 Cl.Ct. 257, 268 (1990). Nevertheless, federal courts have granted rescission of a contract based on mutual mistake under the following circumstances. In *Rash v. United States*, 175 Ct.Cl. 797, 360 F.2d 940 (1966), the court allowed plaintiff to rescind a contract where both parties mistakenly thought the government had title to the land and buildings it sold to plaintiff on an "as is" basis. In *Palumbo v. Ewing*, 540 F.Supp. 388, 392 (D.Del.1982), the court allowed plaintiff to rescind an agreement to purchase real estate, together with an option agreement, where the parties mistakenly believed title to the real estate was free of encumbrances, when in fact there existed an easement, a sewer line and a manhole.

A mistake, as defined by the *Restatement (Second) of Contracts*, section 151, "is a belief that is not in accord with the facts." *See Summit Timber Co. v. United States*, 230 Ct.Cl. 434, 445, 677 F.2d 852, 859 (1982). In *Higgs v. United States*, 212 Ct.Cl. 146, 546 F.2d 373 (1976), the Court of Claims explained that a mistake may justify rescission of the contract under the following circumstances: "[A] mistake, in order to justify rescission, must relate to the intrinsic nature of the bargain.... [A] mistake vitally affecting a fact or facts on the basis of which the parties contracted renders their contract voidable by an injured party." *Higgs, supra*, 212 Ct.Cl. at 150, 546 F.2d at 376 (citing 13 *Williston on Contracts* § 1544 (3d ed. 1970)). *Higgs* reflects the view of the *Restatement (Second) of Contracts*, section 152:

Where a mistake of both parties at the time a contract was made as to a basic

states primarily a claim for a money judgment, and the rescission remedy is incidental to the monetary claim. *See Hartle v. United States*, 18 Cl.Ct. 479 (1989). See also *Gould, Inc. v. United States*, 19 Cl.Ct. 257 (1990), in which the court noted that, although it has broad equitable powers, it "may only grant equitable relief incident to a money judgment: "'Where the relief is monetary, we can call upon such equitable concepts as recision [sic] and reformation to help us reach the right result.'" *Gould, supra*, 19 Cl.Ct. at 261 (quoting *Quinault Allottee Ass'n v. United States*, 197 Ct.Cl. 134, 138 n. 1, 453 F.2d 1272, 1274 n. 1 (1972)).

assumption on which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party unless he bears the risk of the mistake under the rule stated in § 154.

*Restatement (Second) of Contracts,* § 152 (1981); *see also National Presto, supra,* 167 Ct.Cl. at 761, 338 F.2d at 106–07; *Edwards, supra,* 19 Cl.Ct. at 674; *Gould, supra,* 19 Cl.Ct. at 263–64. Section 154 of the *Restatement* states that the risk of mistake may be allocated to a party by the agreement itself, by a party's "conscious ignorance" of the mistaken fact, or by the court when it is reasonable to do so under the circumstances.

A claim for rescission or reformation of the contract based on mutual mistake must involve a material fact. *National Presto, supra,* 167 Ct.Cl. at 761, 338 F.2d at 107; *Gould, supra,* 19 Cl.Ct. at 268; 13 *Williston on Contracts* § 1544 (3d ed. 1970). A material fact is one in existence at the time of the agreement, one that involves a basic assumption of the contract, and one that materially affects contract performance. *Gould, supra,* 19 Cl.Ct. at 268–69. Plaintiffs have the burden to prove mutual mistake. *Gould, supra,* 19 Cl.Ct. at 268–69. The court must be satisfied that, but for the mistake, the Hartles would not have assumed the obligation for which they now seek relief. *See Pauley Petroleum Inc. v. United States,* 219 Ct.Cl. 24, 47, 591 F.2d 1308, 1321 (quoting *Grymes v. Sanders,* 93 U.S. 55, 60, 23 L.Ed. 798 (1876)), *cert. denied,* 444 U.S. 898, 100 S.Ct. 206, 62 L.Ed.2d 133 (1979).

The evidence adduced at trial indicates that plaintiffs wanted to purchase a house with at least three bedrooms, and they would not have considered buying one with only two bedrooms. The testimony of plaintiffs Maxine Hartle and Dawn Hartle Janes clearly and persuasively establishes this unrefuted fact. Plaintiff Dawn Janes explained that she and her husband intended to reside in the house for an indefinite number of years, and they needed a house with enough bedrooms to accommodate a growing family. The record also establishes that, at the time of purchase, the zoning ordinance would not permit the use of the third bedroom in the accessory structure, even for single-family use. Defendant's efforts to prove otherwise at trial were unpersuasive. *See supra* note 4. Use of the third bedroom would violate section 16-4-4 O of the zoning ordinance, which states: "No structure or vehicle on the same lot with the dwelling shall be used for residential purposes." When plaintiffs applied for a variance to permit them to use the third bedroom in the accessory structure for single-family purposes, their application was denied by the city of Englewood's zoning board on the authority of this section of the zoning ordinance.

Clearly, at the time the parties entered into the contract of sale, they were both mistaken in their belief that the property had three bedrooms available for single-family use. It is equally clear that the mistake was material, as it relates to a basic assumption upon which the contract was premised, that is, that the house had three bedrooms available for single-family use. Plaintiffs would not have purchased the house had they known at the time of closing that the house had only two usable bedrooms. Defendant's position throughout the case has been that the zoning ordinance does not prohibit single-family use of the third bedroom in the accessory structure. During the discovery phase of this dispute, defendant responded to plaintiffs' Request for Admissions by asserting that, at the time of closing, the accessory structure could be used as a third bedroom in conjunction with single-family use of the entire property. Defendant's attempt at trial to prove that no mutual mistake exists because the zoning did not prohibit single-family use of the third bedroom was not persuasive.

**B. Constructive Knowledge of Conditions Affecting Title**

The court's inquiry would end here, with a finding of mutual mistake, were it not for the 1985 Zoning Verification Form that was recorded in the county recorder's office. The Zoning Verification Form

states, in pertinent part, that "use of the premises is for single-family purposes only, but the kitchen may remain in the accessory structure as a second kitchen for the single-family use." Defendant argues that, even if a mutual mistake exists, plaintiffs are precluded from the remedy of rescission because they are charged with constructive knowledge of the zoning prohibition under Colorado law. Under Colorado law, "[a] purchaser of real estate is bound to know what the records disclose concerning the title; and if they indicate some outside condition by which it may be affected, he is bound to investigate; and he is charged with knowledge of the facts to which the investigation would lead." *Delta County Land & Cattle Co. v. Talcott,* 17 Colo.App. 316, 68 P. 985, 987 (1902). *See also Upson v. Goodland State Bank & Trust Co.,* 797 P.2d 845, 847 (Colo.App. 1990); *Ragsdale Bros. Roofing, Inc. v. United Bank of Denver,* 744 P.2d 750, 753 (Colo.App.1987).[6]

Generally, federal contracts are governed by federal law. *See, e.g., Penn–Ohio Steel Corp. v. United States,* 173 Ct.Cl. 1064, 1090, 354 F.2d 254, 269–70 (1965); *Transamerica Ins. Co. v. United States,* 6 Cl.Ct. 367, 371 (1984). However, federal courts recognize that state law controls interests in real property, particularly in the absence of federal statutory or common law. *See Wilson v. Omaha Indian Tribe,* 442 U.S. 653, 671–76, 99 S.Ct. 2529, 2539–42, 61 L.Ed.2d 153 (1979); *Murray v. United States,* 231 Ct.Cl. 481, 490 n. 3, 687 F.2d 386, 392 n. 3 (1982); *Foster v. United States,* 221 Ct.Cl. 412, 420–21, 607 F.2d 943, 948 (1979); *Murray v. United States,* 15 Cl.Ct. 17, 21 (1988), *aff'd,* 864 F.2d 148 (Fed.Cir.), *cert. denied,* 489 U.S. 1055, 109 S.Ct. 1318, 103 L.Ed.2d 587 (1989); *Tensaw Land & Timber Co. v. United States,* 14 Cl.Ct. 668, 681 (1988) (on reconsideration).

In the present case, if plaintiffs had checked the county recorder's office and discovered the Preston's recorded Zoning Verification Form, they would have been alerted to the fact that there were matters regarding single-family use of the detached structure that warranted further inquiry. Specifically, the Form stated that "the use of the premises is for single-family purposes only, but the kitchen may remain in the accessory structure as a second kitchen for the single-family use." As discussed above, Colorado cases hold that a purchaser of real property is deemed to have constructive knowledge of duly recorded documents indicating conditions affecting title, and the purchaser has a duty to make further inquiry into those conditions. *See Delta County Land & Cattle Co. v. Talcott,* 17 Colo.App. 316, 68 P. 985 (1902); *Upson v. Goodland State Bank & Trust Co.,* 797 P.2d 845, 847 (Colo.App.1990); *Ragsdale Bros. Roofing, Inc. v. United Bank of Denver,* 744 P.2d 750, 753 (Colo. App.1987). Moreover, Colorado case law implicitly recognizes that zoning ordinances that restrict the use of property affect title. *Talbot, supra,* 484 P.2d at 1243–44; *Arapahoe Land Title, Inc. v. Contract Financing, Ltd.,* 28 Colo.App. 393, 472 P.2d 754 (1970).

---

**6.** Defendant also relies on *Talbot v. Seabert,* 484 P.2d 1242 (Colo.Ct.App.1971), for the proposition that there can be no mutual mistake because plaintiffs are charged with constructive notice of the zoning ordinance through the recording of the Preston's Zoning Verification Form in 1985. In *Talbot,* a case factually similar to the one at bar, a purchaser of real estate sued the seller of real estate and his agents for fraud and misrepresentation in inducing her to buy property that she believed could be rented to tenants. Two recorded documents, both official forms of the Englewood zoning board, specifically stated that the use of the property is restricted to a single-family dwelling. The court held that the purchaser was charged with constructive knowledge of the recorded documents which clearly stated the zoning restrictions on the property, and upheld the dismissal of her suit. *Talbot, supra,* 484 P.2d at 1244. However, the *Talbot* case contains the notation "Not Selected for Official Publication." According to Colorado Appellate Rule 35(f), those cases selected for official publication by the Colorado Court of Appeals must be followed as precedent by lower Colorado courts. In *Bishop & Diocese of Colorado v. Mote,* 716 P.2d 85, 108 n. 16 (Colo.), *cert. denied,* 479 U.S. 826, 107 S.Ct. 102, 93 L.Ed.2d 52 (1986), the Colorado Supreme Court interpreted Rule 35(f) as meaning that cases not selected for official publication lack precedential value. In any event, the Colorado cases discussed above in support of defendant's position do not contain the notation "Not Selected for Official Publication," and suffer no lack of precedential value.

Plaintiffs argue that, under the *Restatement*, "[a] mistaken party's fault in failing to know or discover the facts before making the contract does not bar him from avoidance or reformation" unless the party is guilty of bad faith or unfair dealing. *Restatement (Second) of Contracts*, § 157; *see also Bowen–McLaughlin–York Co. v. United States*, 813 F.2d 1221, 1223 (Fed. Cir.1987); *Southwest Welding & Mfg. Co. v. United States*, 179 Ct.Cl. 39, 53–54, 373 F.2d 982, 991 (1967); *Restatement of Restitution* § 59 (1937). However, a claim of mutual mistake of fact based on unawareness of the current state of the law generally will not warrant rescission or reformation. *See C & L Construction Co. v. United States*, 6 Cl.Ct. 791, 797 (1984), *aff'd*, 790 F.2d 93 (Fed.Cir.1986). The basis for this rule is the principle that everyone is charged with knowledge of the law. *C & L Construction, supra*, 6 Cl.Ct. at 797 (citing *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 385, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947)). Likewise, under Colorado real property law, plaintiffs in this case are charged not only with constructive knowledge of the recorded 1985 Zoning Verification Form, but also with any facts uncovered by an investigation into the zoning restrictions affecting the property.[7]

Therefore, although both parties entered into the contract in dispute with the mutually mistaken belief that the subject property had three bedrooms available for single-family use, Colorado law charges plaintiffs with knowledge of the recorded Zoning Verification Form, and a duty to investigate the matter. *Delta County Land & Cattle Co., supra*, 17 Colo.App. 316, 68 P. at 987. Accordingly, Colorado law places the risk of a mutual mistake regarding zoning on plaintiffs. In addition, plaintiffs were in at least as good a position as HUD to check the zoning on the property to determine whether it suited their needs. Finally, plaintiff Janes was a licensed real estate agent who sold the property to herself. Presumably, she was aware of the importance of checking the county records before purchasing real estate to ascertain the existence of conditions affecting title. Plaintiffs' failure to check the zoning on the property before purchase precludes their entitlement to rescind the contract and recover their purchase price and other costs.

### CONCLUSION

For the foregoing reasons, the court finds plaintiffs are not entitled to rescind the contract of sale, nor are they entitled to recover their purchase price, closing costs, or other damages sought. The Clerk is directed to enter judgment dismissing plaintiffs' complaint. No costs.

---

7. In addition, defendant maintains that plaintiffs had actual knowledge of the recorded 1985 Zoning Verification Form because an employee of plaintiff's attorney admitted that the Form was discovered during a title search on the property before closing. The record is not clear in this regard, but plaintiffs do not refute defendant's assertion.