# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| PROTERRA DEVELOPMENT VENTURES LLC, | No.  47567-7-II |
| Appellant, | |
| v. | |
| FIRST AMERICAN TITLE INSURANCE COMPANY, a California corporation, SEVIER LLC, a Washington limited liability company, BRUCE KIRSCHENBAUM and CHRISTINA KIRSCHENBAUM, husband and wife, PAUL AGEE and JANE AGEE, husband and wife, | UNPUBLISHED OPINION |
| Respondents. | |

SUTTON, J. — Proterra Development Ventures LLC appeals the trial court's order granting First American Title Insurance Company's (First American) motion for summary judgment and dismissal of its claims.  Proterra's claims arise from a real estate purchase and sale agreement where Proterra was the buyer and Sevier LLC was the seller of vacant land in Ridgefield.  At closing, the parties executed a holdback agreement to ensure that expenses to obtain final engineering approval from the City of Ridgefield were paid.  First American was the escrow agent of the holdback account and was instructed to pay invoices as authorized only by Bruce Kirschenbaum, the managing member of Sevier.

Proterra argues that (1) First American breached its fiduciary duty when an escrow agent drafted the holdback agreement, (2) the holdback agreement is ambiguous, and (3) First American dispersed funds without investigating the expenses. We affirm the trial court's grant of summary judgment in favor of First American and award First American its reasonable attorney fees and costs on appeal.

FACTS

On October 18, 2005, Sevier executed the Vacant Land Real Estate Purchase and Sale Agreement (REPSA) to sell vacant land in Ridgefield to Landmark Development LLC (Landmark). Landmark assigned their interest to Proterra. First American was instructed by both Sevier and Proterra to hold the escrow account and Ann Snyder was the escrow officer. The RESPA provided that "[a]ll costs associated with progressing 'Canyon's Ridge' through Preliminary Plat and Final Engineering Approved status is the responsibility of [Sevier]." Clerk's Papers (CP) at 13.

On February 27, 2006, Proterra and Sevier executed the Escrow Instructions Vacant Land (escrow instructions), which contained the following relevant instructions:

> 7. [Proterra] agrees jointly and severally with [Sevier] to pay [First American] all costs, damages, judgments and expenses suffered, expended or incurred by [First American] in connection with or arising out of this escrow, including, but not limited to, reasonable attorney[] fees.
>
> 8. Any additional instructions given to [First American] herein shall be presented in writing. [Proterra] and [Sevier] further understand that contemporaneously herewith there may be instructions by third parties which are necessary for the completion of this escrow and are, therefore, made a part hereof; namely, such instructions as may be received from a lender, grantor, vendor, or others, affecting the property which is the subject of this escrow.

CP at 23.

On March 10, Kirschenbaum contacted First American to discuss a holdback agreement. Snyder informed him of the provisions First American would require in a holdback agreement. When the transaction closed on March 13, final engineering had not been completed on the project.

On March 13, contemporaneously with the closing of the transaction, Proterra and Sevier executed the Escrow Holdback Account Agreement ("holdback agreement") which, in entirety, stated the following:

> An escrow holdback account will be established on March 13, 2006 simultaneous to the closing (recording and funding) of the above referenced file number. First American Title has agreed to be the custodian of the holdback account for 60 days or through May 12, 2006.
>
> The intention of the holding account is to ensure expenses incurred by Sevier, L.L.C. to obtain final engineering approval from the City of Ridgefield for the Canyon's Ridge subdivision are paid.
>
> Provisions
>
> 1. Funds to establish the account come from the proceeds to the transaction, obtained through the closing process on March 13, 2006.
>
> 2. The account duration will not exceed 60 days or May 12, 2006.
>
> 3. The amount of the holdback from closing shall be $75,000.00.
>
> 4. Invoice(s) along with authorization to pay same may only be made to First American Title by Seller, Bruce Kirschenbaum, Managing Member of Sevier, LLC.
>
> 5. Seller shall provide Buyer a final accounting of all invoices once final engineering approval has been issued by the City of Ridgefield.
>
> 6. Any remaining account funds on May 12, 2006 shall be distributed to the Seller, Sevier, LLC, in the form of cashiers [sic] checks or wire transfer.

CP at 28.

Cherilyn R. Costa, senior escrow advisor for First American, testified that First American did not draft the holdback agreement because First American has a standard form and that "the parties must have insisted on using their own." CP at 57. Costa also testified that "[the holdback

agreement] seem[ed] to contain the elements that [First American] would have had in [their] standard agreement as a basic." CP at 57.

On March 15, Kirschenbaum authorized First American to pay an invoice from Olson Engineering, dated February 27, 2006, in the amount of $52,763.07. This invoice included "charges from Nov-Jan" and noted, "Please see attached listing for a current breakdown of charges." CP at 65. However, Kirschenbaum did not send the breakdown of charges to First American along with the authorization. First American paid this invoice as authorized on March 15.

On March 26, Kirschenbaum authorized First American to pay a second invoice from Olson Engineering, dated March 21, 2006, in the amount of $18,923.60. This invoice included charges incurred in February and again noted that the breakdown of charges was attached, but the record does not indicate whether Kirschenbaum sent the breakdown of charges to First American. First American paid this invoice as authorized on March 28.

First American dispersed the remaining funds, in the amount of $3,313.33, to Sevier via wire transfer on May 17, 2006. Prior to the disbursement of the balance, First American did not do anything to determine if there were any remaining final engineering approval expenses.

Proterra's complaint alleged that First American breached its fiduciary duty when it negligently paid requested expenses unrelated to final engineering and sought damages of $75,942.74 for costs incurred relating to final engineering expenses. First American moved for summary judgment, arguing that an escrow agent's duties are defined and limited by contract and that it did not breach the escrow instructions as a matter of law.

4

The trial court granted First American's motion for summary judgment, dismissed Proterra's claims with prejudice, and awarded First American its attorney fees and costs. Proterra appealed.

ANALYSIS

I. STANDARD OF REVIEW

We review summary judgment orders de novo and perform the same inquiry as the trial court, viewing all facts and reasonable inferences in the light most favorable to the nonmoving party. *Elcon Constr., Inc. v. E. Wash. Univ.*, 174 Wn.2d 157, 164, 273 P.3d 965 (2012). Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). Where no dispute as to the material facts exists, summary judgment is proper. *Elcon Constr.*, 174 Wn.2d at 165.

A material fact is one that affects the outcome of the litigation. *Elcon Constr.*, 174 Wn.2d at 164. The moving party bears the initial burden of establishing its right to judgment as a matter of law. *Geer v. Tonnon*, 137 Wn. App. 838, 843, 155 P.3d 163 (2007). Once the moving party satisfies its initial burden, the burden then shifts to the nonmoving party to show that a triable issue exists. *Geer*, 137 Wn. App. at 843. If the nonmoving party "'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial,'" then summary judgment is properly granted in favor of the moving party. *Geer*, 137 Wn. App. at 843 (internal quotation marks omitted) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

## II. ESCROW AGENT'S FIDUCIARY DUTY

Proterra argues that there are genuine issues of material fact as to whether First American breached its fiduciary duty to Proterra when an escrow agent drafted a holdback agreement that was vague and one-sided, when the plain language of the holdback agreement is ambiguous, and when First American dispersed funds without investigating the expenses. We disagree.

### A. DUTY OF FIRST AMERICAN

A claim for breach of fiduciary duty requires (1) the existence of a duty owed, (2) breach of that duty, (3) resulting injury, and (4) that the claimed breach proximately caused the injury. *Micro Enhancement Int'l, Inc. v. Coopers & Lybrand*, LLP, 110 Wn. App. 412, 433-34, 40 P.3d 1206 (2002).

Proterra argues that Snyder, an escrow officer, is held to the standard of a reasonable attorney and has a duty to use standard forms, citing *Bowers v. Transamerica Title Insurance Co.*, 100 Wn.2d 581, 675 P.2d 193 (1983). Proterra also argues that the language in the holdback agreement should be construed against First American as the drafter of the agreement, particularly when Snyder instructed Sevier as to what the agreement should contain. Finally, Proterra argues that the plain language of the holdback agreement only gives First American the authority to pay, not an obligation to pay. We disagree.

### 1. Duty in Drafting

The selection and drafting of escrow instructions is the work of lawyers and is not to be performed by laypersons. *Bowers*, 100 Wn.2d at 586-87. The standards that govern attorneys also apply to lay escrow agents who engage in the unauthorized practice of law. *Bowers*, 100 Wn.2d at 588. A layman who attempts to practice law is liable for negligence. *Bowers*, 100 Wn.2d at

586-87. The duties of an attorney practicing law are also the duties of one who without a license attempts to practice law. *Bowers*, 100 Wn.2d at 587.

But *Bowers* is not analogous here because the use of standard forms is not a duty that an escrow agent owes under *Bowers*. In *Bowers*, the lay escrow agent had a duty to inform plaintiffs of the advisability of obtaining legal representation when she prepared the closing documents including both the seller's escrow instructions and the buyer's escrow instructions. *Bowers*, 100 Wn.2d at 584. Proterra argues that Snyder's communication with Kirschenbaum about First American's requirements for a holdback agreement constitutes the unauthorized practice of law by Snyder. But Proterra offers no evidence that First American drafted the holdback agreement, that they failed to protect one of the parties, or that the resulting agreement was vague or one-sided. Without any evidence that Snyder or First American actually drafted the holdback agreement, there is no evidence that Snyder engaged in the unauthorized practice of law.

2. Duty in Payment Instructions

The escrow agent's duties and limitations are defined by the escrow instructions. *Denaxas v. Sandstone Court of Bellevue, LLC*, 148 Wn.2d 654, 663, 63 P.3d 125 (2003). The tasks in the instructions must be undertaken with "'ordinary skill and diligence, and due or reasonable care.'" *Denaxas*, 148 Wn.2d at 663 (internal quotation marks omitted) (quoting *Nat'l Bank of Wash., v. Equity Investors*, 81 Wn.2d 886, 910, 506 P.2d 20 (1973)). In addition, the escrow agent, as a fiduciary to all parties to the escrow "must conduct the affairs with which [it] is entrusted with scrupulous honesty, skill, and diligence." *Denaxas*, 148 Wn.2d at 663 (alteration in original, internal quotation marks omitted) (quoting *Nat'l Bank*, 81 Wn.2d at 910). Further, Washington

law does not impose a duty on escrow agents independent of the parties' instructions. *Denaxas*, 148 Wn.2d at 663-64.

Washington follows the objective manifestation theory of contracts. *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 154 Wn.2d 493, 503-04, 115 P.3d 262 (2005). When interpreting contracts, the subjective intent of the parties is generally irrelevant if the intent can be determined from the actual words used. *Hearst*, 154 Wn.2d at 504. We do not interpret what was intended to be written but what was written, and we generally give words in a contract their ordinary, usual, and popular meaning unless the entirety of the agreement clearly demonstrates a contrary intent. *Hearst*, 154 Wn.2d at 504. Contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts. *Queen Anne Park Homeowners Ass'n v. State Farm Fire & Cas. Co.*, 183 Wn.2d 485, 489, 352 P.3d 790 (2015), *aff'd*, 633 Fed. Appx. 415 (9th Cir. 2016).

The holdback agreement required that invoices along with authorization to pay the invoices may only be made to First American by Bruce Kirschenbaum and that any remaining funds on May 12, 2006 shall be distributed to Sevier by cashier's check or wire transfer. Therefore, the holdback agreement is not ambiguous because there is only one reasonable meaning to the instructions provided to First American.

While Proterra argues that First American only had authorization, without an obligation, to pay the invoices directed by Kirschenbaum, authorization alone is sufficient when escrow agents do not have a duty to interpret the parties' instructions. Kirschenbaum authorized First American to make two payments to Olsen Engineering and provided supporting invoices. First American paid the invoices as authorized and distributed all remaining funds to Sevier via wire transfer, as

instructed under the holdback agreement. Furthermore, First American may have been liable under the terms of the holdback agreement if it had refused to make the authorized payments.

B. DISBURSEMENT OF FUNDS

Proterra argues that there are genuine issues of material fact as to whether First American was negligent in paying bills unrelated to final engineering when it dispersed the funds without any investigation as to the nature of the expenses and that First American was to distribute the remaining funds only after Sevier provided Proterra with a final accounting of expenses. We disagree.

An escrow agent or holder becomes liable to his principals for damage proximately resulting from his breach of the instructions, or from his exceeding the authority conferred on him by the instructions. *Equity Investors*, 81 Wn.2d at 910.

Although Proterra argues that First American had only the authority to pay and not an obligation to pay, there is no instruction that imposes a duty upon First American to investigate or otherwise authenticate the nature of the expenses paid. The unambiguous instructions provide only that First American has the authority to pay invoices upon receipt of the invoice and authorization to pay by Kirschenbaum. Additionally, while Proterra argues that when read "in context," First American was only authorized to distribute "remaining funds" after Sevier had provided Proterra with a final accounting, this requirement was not contained in the instructions. Br. of Appellant at 11.

First American was not instructed to withhold disbursement of funds pending a final accounting. On the contrary, First American was instructed only to disperse any remaining funds

to Kirschenbaum via cashier's check or wire transfer on May 12, 2006. First American complied with the unambiguous language of the holdback agreement.

ATTORNEY FEES

First American includes a request for reasonable attorney fees and costs under RAP 18.1 and argues that the escrow instructions provide that Proterra and Sevier agreed jointly and severally to pay First American's reasonable attorney fees and costs incurred in connection with or arising out of escrow. We agree and award First American's reasonable attorney fees and costs on appeal.

Fees may be awarded where there is a contractual provision or statute for awarding such fees. *Thompson v. Lennox*, 151 Wn. App. 479, 491, 212 P.3d 597 (2009). "'A contractual provision for an award of attorney fees at trial supports an award of attorney fees on appeal under RAP 18.1.'" *Thompson*, 151 Wn. App. at 491 (quoting *W. Coast Stationary Eng'rs Welfare Fund*, 39 Wn. App 466, 477, 694 P.2d 1101 (1985)).

The escrow instructions provide that "[Proterra] agrees jointly and severally with [Sevier] to pay Escrowee all costs, damages, judgments and expenses suffered, expended or incurred by Escrowee in connection with or arising out of this escrow, including but not limited to reasonable attorney fees." CP at 23. They also contemplated additional instructions and provide that "any additional instructions given to the Escrowee herein shall be presented in writing . . . [including] instructions by third parties which are necessary for the completion of this escrow and are, therefore, made a part hereof." CP at 23. Thus, the holdback agreement is made a part of the escrow instructions and the fee provision applies to award First American reasonable attorney fees and costs.

CONCLUSION

We hold that there are no genuine issues of material fact and affirm the trial court's order granting First American summary judgment. Proterra offers no evidence that First American breached its fiduciary duty or engaged in the unauthorized practice of law when it failed to use their standard form or when Snyder instructed Kirschenbaum as to its requirements for a holdback agreement. Proterra also offers no evidence that Snyder actually drafted the agreement. We further hold that First American's duty was defined by the escrow instructions, the holdback agreement is not ambiguous, and First American did not breach its duty when it complied with the escrow instructions and paid invoices authorized by Kirschenbaum. We award First American's reasonable attorney fees and costs on appeal as they arise out of the escrow instructions.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

BJORGEN, C.J.

MAXA, J.

11